I'm Dan Johnson, attorney for Robert Pete Gomez. There's four parts of my brief under A and B. Those were the Blakely Booker argument and the argument about whether the Armed Career Criminals Act applies. I'll just rely on the brief for those arguments. Mostly that's to preserve potential arguments for the Supreme Court if they ever take up that issue. The two key issues I believe are important for consideration are the failure of the trial court to give the mere presence instruction. That's under section C of my brief. And also what I would consider is probably the major item of dispute that I think is important is what happened with the jury in this case. Judge Van Sickle, normally a pretty careful judge, had the highest respect for him. But in this particular case, it's curious how this all happened. And just a quick rehash of the facts, the jury of 12 was constituted. The judge released the two alternate jurors, excused them. And then one of the jurors, the judge, it was the end of the day, the judge indicated to the jury panel, suggested to them that they go home for the night. But he didn't command them to do that. One of the jurors piped up and said, like they sometimes do, is it okay if we deliberate? So, well, that's up to you, the judge says, sends them off, just paraphrasing what was said. So the jury goes in, deliberations begin. And after that, the judge asked the lawyers to stick around. They did. Eventually, the jury said, well, we're going to go home. Do we know how much time elapsed between the time he sent them in and the time they buzzed back? We don't from the record, but I can tell you in my past, I had a case where a jury found a person. I'm just curious if there's anything in the record that shows that. There's nothing in the record, no. And so there's no evidence. Is there any docket entry indicating when the jury actually was signaling that they were departing? There may be. It's not something I would have, you know, necessarily, I think it's something government probably should do if they want to argue that. Well, sometimes the clerks, you know, are keeping track of the day's events, will record in the minutes of the day's proceedings what time the jury departs. I understand that, but it's not part of the record in the jury. Right. That's what I was asking, if you know. So the question is, I mean, you know, I've had verdicts where juries come back in five minutes with a verdict. So, you know, we don't know what went on in that jury room. And that's one of the big problems here, because also the judge brought the defendant in without his counsel and then proceeded to talk to one of the jurors who claimed she was too busy. That's a bit unusual. We don't know what happened in the jury room, do we? And why? Because no one asked the question of that juror. There was no chance for my client's lawyer to ask those questions. Like, were you under stress? Were you the only one that voted not guilty? We don't know. And the matter, the amount of time involved, I don't think is critical to that question. The question is the jury. Well, you could infer from his conversations with the juror, the juror was complaining about being tired, having worked late, and, you know, concerned about getting grant proposals out, that you can infer. You can infer from that that her concern was not over what went on in deliberations, but her own personal circumstance, that she just wanted to be part of that jury. She took too much of her time. Well, we don't know for sure what went on in the jury room, because the question was never asked, because my client's lawyer was not allowed to participate in that. And they were in the jury room long enough for the court to take a recess. I noticed in the record, when the court announced to counsel that the jury had reached its decision, quote, they have decided to leave, I have so advised counsel that you may know the jury is not going to deliberate further, which raises a question, have they deliberated, and if so, about what? They are going to leave the courthouse and return tomorrow morning at 9 and go forward with their deliberations at that time. So then we look at what happened then. The judge brings that juror in, brings my client in without his lawyer there. My client, he has nothing he can say. The judge proceeds. And I'm not saying the judge's decision to get rid of that juror is necessarily a reversible error. I'm complaining about the procedure, because an excused alternate juror, who no one ever asked, did anyone talk to you, ma'am, between the time you left here and you came back? We don't know, because the question was never asked, another problem with not having my client's lawyer to participate in the process. And then to compound the error, the next day, no one's told, tells that juror, you have to, and the jury as a whole, that you have to restart your deliberations. Again, we don't know what happened in the jury room, because the questions were never asked, and maybe they shouldn't have. Is it clear that the judge actually released the jurors, the alternates?  It is. Page 220 of the transcript, 88 of the excerpt of record, he clearly releases the alternate jurors. He thinks and excuses them? He excuses them as alternate jurors. Do we have any idea how it is that one alternate was still hanging around? Well, frankly, if you look at the record, the judge wanted the two jurors to wait, so he could talk to them later. That's right. So, I mean, that is in the record. But, again, what did the two jurors may have started their own little mini-deliberation once they were excused? No one asked the question. We don't know. And so, when we get to that, that question of looking at what kind of error occurred here in light of that, and also a juror who's been excused is now put back on the jury over objection, another violation of the rules, and I think a violation of my client's constitutional rights, when you look at that, is this a trial error or is it a structural error? I would argue it's a structural error, and the test for that is he needs a new trial. And if you even use the other test, where it's the burden on the prosecutor to prove harmless error beyond a reasonable doubt, we meet that test as well, because we don't know what happened. And it's unfortunate, you know, you go through a trial, but my client does have a right to have a jury that's properly constituted and not torn apart in the absence of his counsel and input in that process. Counsel, your time is running out. Would you comment on the mere presence instruction? I would, Your Honor. You know, when you look at something like the Negriti-Gonzalez case, it seems to favor the government's side that unless there's no other evidence except mere presence, the instruction doesn't need to be given. But in this case, if you believe, and I'll quickly go through it, Mrs. Guzman, Ms. Ontiveros, who was the driver of the car, and then Ms. Jennifer Bissell, who was another housemate, if you believe their version of the case, they dispute what the police officers say. They dispute what Ms.  If you believe the defendant's version, then all there was would be mere presence. My client happened to be in the car where a gun was found under the seat. And so under those circumstances, mere presence instruction would be appropriate. And if you look at the general law instructions and when they should be given, and I've cited that in my brief, I think there's factual basis in the record for this instruction to be given. Do you want to take a few minutes for rebuttal? I'll see you, bud. Yes, thank you. Good morning. My name's Robert Ellis. I'm an assistant in the Eastern District of Washington. This case became mine shortly before trial due to an illness of one of our assistants. I did try the case, and I did prepare a brief on appeal. I'll start where Mr. Johnson started with Rule 24 and will freely admit to the court, I wish Judge Van Sickle had said the morning of the 9th when the jury took up their true deliberations, please start your deliberations over. I think this entire issue would essentially have gone away had he made that simple statement. He didn't. So we're left looking at what the record relates. I can tell the court that this was a relatively straightforward case. We picked the jury the afternoon of the 7th. The testimony was the 8th. The jury deliberated for roughly two hours on the 9th. What transpired the evening of the 7th, we finished roughly 545 that evening with testimony and argument. The judge did excuse the two alternate juries, Ms. Westergaard and the other lady whose name I don't recall at this point. He asked them to wait in the jury room for him, and that's on the record. There was the discussion while the panel was still in the courtroom. The one juror asked if they could begin deliberations tonight. He said, you must decide that tonight, and you all have to agree and give me that answer. But it's also clear that he did not intend for deliberations to begin because that was the case. In 224, the transcript, it says if you advise you're going to proceed with deliberations, the exhibits will be delivered to you, or to the jury room for that use. And those exhibits were never delivered to the jury room. The following morning, the transcript discloses that at that point. How many exhibits were there, by the way? One was the gun. The government had a total of eight exhibits, and my recollection is that Mr. Gomez had a total of eight exhibits. So there are three defense exhibits and eight government exhibits. One was the gun. One was the gun. The gun wasn't going to go back in the jury room in any event. That's correct. There were also the bullets, and Judge VanSickle's practice not to send that. Right. That was it. That's the standard practice. So there was these two stipulations, the gray and black jersey in question, the other shirt, Mr. Gomez's property located at the jail, and two photos. Well, there's no requirement that jurors have the exhibits to deliberate. No, there's no requirement. It's certainly a normal practice that the exhibits are in the jury room when the jury's taking part in deliberations. So we know that the jury was sent back with specific instructions to talk about whether they were going to deliberate that night. We know Ms. Westergaard never left the court. We know Ms. Lee raised the issue about doing the deliberations that night. The court asked Mr. Johnson about the time that transpired between the time the jury left the courtroom and the time the court came out and notified counsel that the jury was not going to proceed that night. I can tell the court from being there it was less than 15 minutes, but I can't find that on the record any place. Now, I looked at the record, too. What bothers me about this case is all sorts of things could have happened at that time. The woman could have said, you know, if you're going to plead guilty, I'll stay. If you're not, I'm busy. I have to go back to work. Do we agree or do we not agree? I mean, there's so many things that could have taken place there that even though 15 minutes took place and then when the judge said you will deliberate further tomorrow, it raises all sorts of questions that aren't answered in the record. Can you help me out? Your Honor, I wish I could and I can't. I can have my own personal recollection of the chain of events. I can tell you, Your Honor, that Ms. Westergaard was there and the judge's colloquy with Ms. Lee is in the transcript about her concerns. Ms. Westergaard was there. He talked with her, came back, and he addressed the jury briefly the following morning. The courts reviewed that as well as we have. Like I said, I wish Judge VanSickle had said that morning. But we don't know what the two alternate jurors may have discussed between themselves having been released from this case. That's true, Your Honor. We do not. No question was ever asked of them. I think that the remedy here may be well different than a new trial, however. It seems to me like we can ask those questions of those jurors. That's been done in other cases in the past. You remanded back to the district court to some of the jurors and simply asked them the questions. Were there deliberations? It would appear to me that if all they discussed about was whether they were going to proceed that night, that's not deliberation. If they took that next step and, for example, picked a jury for a person, I would have to concede that that's part of the deliberative process and the mistake was made. But it seems to me like the answer does not require remand for a new trial. It may require remand to supplement the record a little bit. On the issue of mere presence instruction, this was when I got the case, as I got short before trial, and I had some concerns about the case. I think those are obvious from reading the record. I had very little to deal with other than the testimony of Officer Krieger, who came around the corner of the house, looked directly through the windshield, and saw Mr. Gomez. He's characterized as leaning over, putting something under the seat. Now, there may be other innocent explanations for that. Mr. Gomez could have been looking for the lever to adjust the seat. I mean, he may have been doing isometric exercise. There are other things happening, but the point is, it concerned Officer Krieger enough that he pulled his firearm and told him he wanted to see hands. So there was something there that caused the officer concern. We have to accept that. And then the search was conducted, and underneath Mr. Gomez's seat, the black and gray jersey and the pistol were found. That's not a real strong case. I'm more than willing to admit that. This was an easy case for me, however, at trial, principally because of Mr. Ontiveris, who I called as a government witness, but I characterize as a defense witness, certainly, and the two defense witnesses. This was strictly a credibility call for that jury. But wasn't the defendant, then, at least entitled to have his theory presented to the jury? Well, Your Honor ---- Because it was such a thin case, as you just said. It seems to me that ---- and this is a problem that I'd ask a little paradigm shift of the court a little bit, because I've looked at this a lot. This and one other case brief I wrote years ago. The mere presence instruction doesn't appear to me to add much to a possession case like this. In a possession case like this, you have three standard instructions, and they were all present in this case. The elements instruction, the mens rea or knowledge instruction, and the constitutes possession, either actual or constructive. I don't see that mere presence adds anything to that. And I'll give you some example. If an individual is caught with a key to a lockbox or a storage facility someplace, that can be considered as constructive possession. And that's kind of like mere presence. We don't give mere presence instructions there. I'll change the argument to a key for an automobile. A search of the house is conducted. There's a car parked outside. One of the people in the house has a key to the car. That's not really a mere presence situation. It seems to me like the three standard instructions given in a possession case like this cover the full gamut, permitting the defense to make completely the argument, as Mr. Dolan did. If you read his argument, that was his argument. And the instructions permitted him to make his full and complete argument. A mere presence instruction doesn't add anything to this. I read in the Gretz case where we required the mere presence instruction that the defendant accompanied the drug dealers to the drug dealer's house. And he was observed conducting counter-surveillance during the illegal transaction and passing a knife into the bedroom where the drugs were exchanging hands. I mean, it was a whole lot more in that case. But the mere presence instruction was required. And, Your Honor, the distinction I draw here is that's an active kind of crime. That's a distribution kind of crime where you have another defendant, not the defendant doing the distribution, but another defendant merely present. In this case, possession is really kind of a passive crime. You either have actual or constructive possession, or you don't. There's no other actor out there acting in some way, shape, or form. You also have the addition of the possession instruction, which you don't have in a straight distribution case. But then I read the Mendenhall case where the instruction was not required. But in that case, the defendant owned the vehicle in which the illegal drugs were found. He organized the transactions, and he actually purchased the drugs. It says mere presence not required. But here, there's practically nothing. He's sitting in the front seat of the car. Well, no. He's seen in the front seat. He doesn't own the car. He's doing something that causes that officer enough concern to draw his weapon and tell him he wants to see hands. So whether there's an innocent explanation or a guilty explanation of that, we have to accept that that's there. I'm not saying he's not guilty, but the sole question that concerns me is whether he was entitled to that instruction. From the government's point of view, you have presence, admittedly. You have his activity. And then you have the testimony at the trial of these three witnesses, which is so absolutely incredible. Their demeanor, their motivation, their consistency, and yet inconsistency just was patently smacked of collusion in coming up with their story about what they saw that morning when Mr. Gilmour has walked out of the house. Those three things seems to me, if Your Honor's correct that a mere presence instruction should normally be given, those three things, to me, take it outside of that and show that the government had more than his mere presence. We're not relying primarily on his mere presence at trial, but his motion and the people in support of him. Okay. Thank you. Let me just quickly speak to that. Yes, if you believe the government's version, but the two of the witnesses deny that my client came out of the house with this black and gray T-shirt, and the other, Ms. Ontiveros, the jury was instructed that her alleged prior statements could not be considered substantive evidence. So if you believe that, all you have is the guns under the seat, but that's where the question would be, if my client knew the gun was there, but it wasn't his gun, it was his girlfriend's gun, and it's her car, does his knowledge alone make him guilty? I don't believe it does. He doesn't have the power and intention to control it. And that's where that mere presence instruction would have been important to give the defense a chance to argue its theory. What's your response to the government's suggestion that on the jury instruction issue that we should send this back to the district court for supplemental fact-finding? I think after the amount of time that's gone by, I don't think it would be a reasonable way to go about it. Also, I think the fact that the alternate juror, who had already been excused, was put back on the jury, I don't think it can correct that error. And so because I think it was an improperly constituted jury at that point. So that's basically my position. Okay. Thank you. Thank you. The matter will be submitted.
judges: D.W. Nelson, Thompson, Paez